# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KAYLA JOHNSON, | ) | |
| Plaintiff, | ) | Case No. 14 C 4622 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| CREIGHTON UNIVERSITY and DEBA | ) | |
| SARMA, M.D., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Dr. Deba Sarma, a dermatopathologist at Creighton Medical Laboratories at Creighton University in Nebraska, examined a lesion excised from plaintiff Kayla Johnson's leg in Illinois and determined that there was no suggestion of melanoma. Johnson was subsequently diagnosed with melanoma, and this diversity lawsuit against Dr. Sarma and Creighton University followed. Dr. Sarma and Creighton University have moved to dismiss for lack of personal jurisdiction and improper venue pursuant to Fed. R. Civ. P. 12(b)(2) and (3), respectively. For the following reasons, the motions to dismiss are denied.

## I. BACKGROUND[1]

**A.   The Parties**

Plaintiff Kayla Johnson is an Illinois citizen. Defendant Deba Sarma. M.D., is a Nebraska citizen who was employed by Creighton University when this lawsuit was filed but is

---

[1] The following facts are drawn from the amended complaint and are accepted as true for the purpose of the motions to dismiss. *See*, *e.g.*, *Hill v. Capital One Bank (USA), N.A.*, No. 14 C 6236, 2015 WL 468878, at *1 n.1 (N.D. Ill. Feb. 3, 2015) (motion to dismiss for lack of personal jurisdiction); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011) (motion to dismiss for improper venue). In addition, the court allowed Johnson to pursue limited jurisdictional discovery. It has considered the declarations and other materials submitted by the parties in support of, or opposition to, the motions to dismiss. *See Gilman Opco LLC v. Lanman Oil Co.*, No. 13 C 7846, 2014 WL 1284499, at *7 (N.D. Ill. Mar. 28, 2014).

now retired. From 2006 to 2012, Dr. Sarma served as Creighton University Medical School's Director of Dermatopathology. Defendant Creighton University is a Nebraska corporation with its principal place of business in Nebraska.

Katie Booton, a risk management specialist with Creighton University, submitted an affidavit in support of Creighton University's motion to dismiss. She asserts that Creighton University had an agreement with Dr. Eric Santos, who treated Johnson in Illinois. Pursuant to this agreement, Creighton provided consulting opinions on certain pathology slides. Creighton University entered into a pricing agreement with Dr. Santos' medical practice for the pathology work it performed. Dr. Santos testified at his deposition that prior to the filing of this lawsuit, Creighton University periodically reached out to him to advise him of additional testing services it offered and to provide updated pricing lists. (Santos Dep., Dkt. 73-11, at 38.) From 2006 through 2009, Dr. Santos sent approximately one to two pathology slides to Creighton University per month, including pap smears and prostate biopsies.

In addition, schools and departments of Creighton University have entered into affiliation agreements with entities in Illinois. Booton describes these as "agreement[s] that Creighton University has with other healthcare facilities to allow its students to receive credit for rotations at those healthcare facilities." (Booton Aff., Dkt. 41-2, ¶ 10.) According to Creighton University, its School of Pharmacy currently has approximately eighty-five affiliation agreements with healthcare facilities in Illinois and approximately eleven long-distance students in Illinois. Creighton University School of Physical Therapy has approximately eleven active affiliation agreements with healthcare facilities in Illinois and approximately eight students performing clinical rotations in healthcare facilities in Illinois this year. Creighton University

School of Occupational Therapy has eighteen affiliation agreements and approximately ten students who perform clinical rotations in healthcare facilities in Illinois each year.

Johnson asserts that at least fifty-two affiliation agreements contain a choice of law clause providing that any disputes will be governed by Illinois law and at least thirty-seven of these agreements contain a forum selection clause specifying that litigation must proceed in Illinois. She also states that the affiliation agreements require Creighton University to maintain liability insurance covering Illinois hospitals where its students practice.

Creighton University has an Alumni Club in Illinois that maintains a Facebook page and hosts events. Creighton University Alumni Relations staff occasionally attends these events. Creighton University's admissions department has one employee who resides in Illinois. Her territory covers Illinois and portions of Wisconsin. Creighton University has five additional employees who reside in Illinois and work as "online faculty and/or in other capacities." (*Id*. at ¶ 13.) Creighton University's marketing and communications department engages in digital marketing "in various regions of the country." (*Id*. at ¶ 14.) Illinois is in one of these regions, but Booton asserts that Creighton does not specifically target advertising at Illinois.

Johnson asserts that Creighton University refused to disclose how much money it makes based on contacts with Illinois. To the extent that she sought this information (the citations in her filings are unclear), she did not follow up with the magistrate judge supervising jurisdictional discovery.

**B.      Johnson's Diagnosis**

In January 2011, Johnson had an appointment with Dr. Damian Grivetti at St. Margaret's Health Center in Peru, Illinois. Dr. Grivetti excised a lesion on Johnson's leg and sent it to the

pathology department at St. Margaret's Hospital to be evaluated for possible melanoma. Eric Santos, M.D., a pathologist at St. Margaret's, opined that "the pathology showed an atypical compound melanocytic proliferation, with the differential diagnosis including atypical spitz nevus versus spitzoid melanoma."[2] (Am. Compl., Dkt. 23, at ¶ 13.)

Before issuing a final report, Dr. Santos sent the slide containing the excised lesion specimen to Creighton Medical Laboratories for further review and consultation. Dr. Sarma was licensed to practice medicine in Illinois at the time and had clinical privileges at St. Margaret's Hospital in Illinois. Dr. Sarma examined the specimen at Creighton Medical Laboratories at Creighton University. In his affidavit submitted in support of his motion to dismiss, Dr. Sarma asserts that he did not control whether or how much Dr. Santos considered his opinion when deciding how to diagnose and treat Johnson.

Dr. Sarma diagnosed spitz nevus and concluded that there was "no suggestion of melanoma" and that the "margins [were] clear." (*Id.* at ¶ 14.) He also stated that "while the atypia may be treated with a wider conservative excision," he did "not expect to find any residual tumor." (*Id.* at ¶ 15.) Dr. Sarma's surgical pathology report contains a "final diagnosis." (Final Report, Dkt. 73-5.) It bears the logo of Creighton Medical Laboratory and lists Kayla Johnson as the patient, the requesting doctor as Dr. Santos, and the requesting clinic as "St. Margaret's Health 947." (*Id.*)

---

[2] A spitz nevus is "a benign, slightly pigmented or red superficial small skin tumor composed of spindle-shaped, epitheliod, and multinucleated cells that may appear atypical; most common in children but also appearing in adults." STEDMAN'S MEDICAL DICTIONARY 1318 (28th ed. 2006).

When Dr. Sarma faxed his report to St. Margaret's, he attached a signed consent and release attaching a copy of his medical license and proof of insurance and sought a renewal of his "Medical Staff membership and clinical privileges at St. Margaret's Hospital." (*Id*. at 2-5.) According to Dr. Sarma, he was licensed to practice medicine in Illinois and had courtesy staff privileges at St. Margaret's Hospital in Illinois "in anticipation of potentially providing coverage to Dr. Santos while he was on vacation," but ultimately never covered for Dr. Santos or practiced in Illinois. (Sarma Aff., Dkt. 25-2, ¶ 11.) Dr. Sarma did not believe that the opinion requested by Dr. Santos about Johnson's biopsy had anything to do with his medical license in Illinois or his privileges at St. Margaret's Hospital.

Dr. Santos testified at his deposition that Dr. Sarma called him to discuss the completed report and Dr. Sarma's conclusions. Dr. Santos relied on Dr. Sarma's opinion in diagnosing Johnson and deciding that no additional treatment was necessary. Dr. Santos believed that Dr. Sarma's report meant that as of February 2011, Creighton had ruled out melanoma.

In August 2012, Johnson was diagnosed with malignant melanoma, node positive, Stage III. She was pregnant, and by the time she could receive treatment, she had developed Stage IV metastatic melanoma. In October 2013, Loyola University Medical Center pathologist Kelli Ann Hutchens, M.D., reviewed the pathology slides that Dr. Sarma had reviewed in 2011. Dr. Hutchens reported that "the differential diagnosis would include a malignant melanoma . . . versus an atypical Spitz nevus, and that in light of the recent history of metastatic melanoma[,] the former would be favored." (Am. Compl., Dkt. 23, ¶ 22.)

In her federal court complaint, Johnson asserts negligence based on vicarious liability against Creighton University flowing from Dr. Sarma's actions (Count I) and a negligence claim against Dr. Sarma (Count II).[3]

## II. DISCUSSION

The defendants have moved to dismiss for lack of personal jurisdiction and improper venue. As discussed below, the court finds that Dr. Sarma and Creighton University are subject to specific jurisdiction in Illinois so the court need not reach the parties' arguments about general jurisdiction. In addition, venue is proper in this district.

### A.     The Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

#### 1.     Legal Standard

When a defendant moves for dismissal under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). If no evidentiary hearing is held and the motion is decided on written materials submitted by the parties, as is the case here, the plaintiff must make only a prima facie case of personal jurisdiction. *Kipp v. Ski Enter. Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). When evaluating whether the plaintiff has carried its burden, the court must resolve any factual disputes in the plaintiff's favor. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).

---

[3] Johnson also asserted a negligence claim against Dr. Tracey Harbert, another Creighton doctor, but subsequently dismissed her claim against Dr. Harbert.

Illinois' long-arm statute stretches as far as the Due Process Clauses of the Illinois and federal constitutions permit. *See* 735 Ill. Comp. Stat. § 5/2–209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."); *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (holding that "there is no operative difference between those two constitutional limits"); *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (assuming that Illinois and federal standards for the exercise of personal jurisdiction are coextensive).

The federal Due Process Clause authorizes personal jurisdiction over out-of-state defendants who have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant's contacts with the forum state must be such that it could "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

General jurisdiction is available when a defendant's contacts with the forum state are "continuous and systematic," even when a plaintiff's claims do not arise out of those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). "[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S.Ct. 746, 750 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846,

2851 (2011)). The "paradigm" for the exercise of general jurisdiction is a corporation's "place of incorporation and principal place of business." *Id*.

A court may also exercise specific personal jurisdiction over a defendant based on the defendant's contacts with the forum state. *See Helicopteros*, 466 U.S. at 414 & n.8. The Seventh Circuit has identified "three essential requirements" for specific jurisdiction: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (internal citations omitted). The analysis is not "mechanical or quantitative." *Int'l Shoe*, 326 U.S. at 319. The ultimate question is "whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court *with respect to this litigation*." *Purdue Research Found. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003) (emphasis in original).

### 2. Dr. Sarma

Johnson argues that the Illinois Appellate Court's decision in *Kostal v. Pinkus Dermatopathology Lab., P.C.,* 827 N.E.2d 1031 (Ill. App. 2005), is persuasive and shows that an out-of-state pathologist who diagnoses an Illinois resident is subject to specific personal jurisdiction in Illinois. Dr. Sarma, in contrast, asserts that Johnson's reading of *Kostal* is overly broad and that the facts of that case are distinguishable. While Johnson's arguments about *Kostal* are occasionally sweeping, the case is fundamentally indistinguishable from the instant case and supports a finding that Dr. Sarma is subject to specific jurisdiction in Illinois.

*Kostal* involved an Illinois resident whose doctor sent tissue samples to a pathology laboratory in Michigan that operated on a nationwide basis by sending "expert diagnosis service by mail." *Id*. at 1033. The laboratory sent an inaccurate report to the plaintiff's doctor in Illinois, causing her to delay in obtaining necessary treatment. The plaintiff filed suit against the laboratory and the doctors who diagnosed her, and the defendants moved to dismiss for lack of personal jurisdiction. The appellate court affirmed the denial of the defendants' motion to dismiss, explaining:

> Defendants purposefully directed their activities at Illinois. It is undisputed that defendants willingly received plaintiff's tissue specimens from Illinois in containers supplied by them free of charge, generated three diagnostic reports that were faxed or mailed to Illinois knowing they would be relied upon by plaintiff's physician and rendered a diagnosis knowing that it would form the basis of plaintiff's further treatment in Illinois. As plaintiff further notes, however, her case here is even stronger and bolstered by defendants' admission of a prior, ongoing relationship with plaintiff's doctor, sending him blank requisition slips and other biopsy supplies to his Illinois office, combined with the fact that defendants held themselves out via the Internet as "nationwide" service providers.

*Id*. at 1044.

Dr. Sarma stresses that he does not have a nationwide practice like the hospital in *Kostal*. This is irrelevant as Johnson has pointed to evidence showing that Dr. Sarma had clinical privileges with St. Margaret's Hospital in Illinois prior to opining on Johnson's biopsy at the request of Johnson's doctor at St. Margaret's. The record supports an inference that Dr. Sarma knew that he was rendering an opinion for a specific patient in Illinois as he prepared a "final diagnosis" that named Johnson and listed Dr. Santos as the requesting doctor and St. Margaret's as the requesting clinic. When Dr. Sarma sent his report, he was licensed to practice medicine in Illinois and had a relationship with St. Margaret's based on his periodic analysis of biopsies sent by Dr. Santos and his staff and his clinical privileges at St. Margaret's. In addition, when Dr.

Sarma faxed Johnson's report to St. Margaret's, he intended to leave the option of further dealings with St. Margaret's open as he attached his renewal paperwork for medical staff membership and clinical privileges there. Dr. Sarma also did not merely send a report to St. Margaret's in Illinois; he sent the report and then discussed his report telephonically with Dr. Santos. Finally, while Dr. Sarma asserts that he did not personally receive payment for his work on Johnson's sample, the record shows that Dr. Santos paid Creighton University – Dr. Sarma's employer at the time – pursuant to an agreed-upon schedule.

While Dr. Sarma contends that these actions are insignificant and voices his belief that Dr. Santos was free to reject the conclusions in the report, these actions all show a purposeful connection with Illinois. These contacts with Illinois also mean that this is not a so-called "portable tort" case where jurisdiction is solely based on the fact that a patient traveled to a physician's home state to obtain treatment and then returned home and filed suit. *See Kennedy v. Freeman*, 919 F.2d 126, 129-30 (10th Cir. 1990) (a court may exercise personal jurisdiction "over a doctor only when she has purposefully availed herself of the privileges of conducting activities within her patient's state" so contacts arising out of an out-of-state patient's visit to a physician are insufficient to subject the physician to personal jurisdiction in the patient's home state). Dr. Sarma's motion to dismiss based on the lack of specific personal jurisdiction is, therefore, denied. *See id*. (an Oklahoma court could exercise personal jurisdiction over a Texas physician who received a tissue sample from an Oklahoma physician taken from an Oklahoma patient, analyzed the sample, and communicated an alleged negligently erroneous diagnosis to the requesting Oklahoma physician); *cf. Smith v. Lab. Corp. of Amer., Inc.*, No. CV09-284-E-EJL, 2009 WL 3872042, at *6 (D. Idaho Nov. 17, 2009) (declining to exercise personal

jurisdiction over a doctor who analyzed a biopsy sample where the plaintiffs "ma[de] no allegation that [the doctor] personally knew the biopsy sample originated from Idaho or that [the doctor] personally knew her pathological evaluation would be sent to a patient in Idaho").

### 3. Creighton University

Johnson argues that specific jurisdiction over Creighton University is proper based on Dr. Sarma's contacts with Illinois. Alternatively, she asserts that the court may exercise general jurisdiction over Creighton University based on its contacts with Illinois. As with Dr. Sarma, the court will confine its consideration to the parties' arguments about specific jurisdiction. Creighton University contends that specific personal jurisdiction does not exist based on the allegations that "Plaintiff's non-party Illinois physician made the request to Creighton's employee for a consultation, and that Plaintiff's non-party Illinois physician prepared and provided his own final report to Plaintiff's non-party Illinois health center, which purportedly indicated to Plaintiff that no follow-up medical treatment was necessary." (Creighton's Mot., Dkt. 41, at 8.) This misstates the record, which is discussed above in connection with Dr. Sarma and must be construed in Johnson's favor. *See N. Grain Mktg., LLC*, 743 F.3d at 491.

Johnson's claim against Creighton University is based on the actions of Dr. Sarma, who was employed by Creighton University when he opined on Johnson's biopsy. The specific jurisdiction analysis applicable to Dr. Sarma applies equally to Creighton University. *See Kostal*, 827 N.E.2d at 1045. The court also notes that Creighton University and Dr. Santos' medical practice entered into a pricing agreement for pathology work, and prior to the filing of this lawsuit, Creighton University periodically reached out to Dr. Santos to offer additional testing services and provide updated pricing lists. Moreover, starting in 2006, Dr. Santos sent a

small but generally consistent number of pathology slides to Creighton University for analysis. Accordingly, the court rejects Creighton University's contention that it did not interject itself into Illinois based on Johnson's treatment. Creighton University's motion to dismiss based on lack of specific personal jurisdiction is denied.

**B.     The Defendants' Motion to Dismiss for Lack of Venue**

**1.     Legal Standard**

When considering a Rule 12(b)(3) motion to dismiss for improper venue, the court may look at documents outside the pleadings. *ForteCEO Services, Inc. v. Terra Contracting, LLC*, No. 11 C 5179, 2012 WL 2597888, at *2 (N.D. Ill. July 3, 2012) (citing *Faulkenberg v. CB Tax Franchise Sys.*, 637 F.3d 801, 809-10 (7th Cir. 2011)). In a civil action, venue is proper in, among other places, "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Events in the forum district are "substantial" if the plaintiff establishes they "were part of the historical predicate for the instant suit" and have a "close nexus" to her claim. *Jackson v. N'Genuity Enterprises, Co.*, No. 14 C 2197, 2014 WL 4269448, at *6 (N.D. Ill. Aug. 28, 2014) (internal quotations and citations omitted).

When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. *Soucy v. Capital Mgmt. Servs., L.P.*, No. 14 C 5935, 2015 WL 404632, at *5 (N.D. Ill. Jan. 29, 2015). Factual conflicts are resolved in the plaintiff's favor, and the court may draw reasonable inferences from those facts. *Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962, 964 (N.D. Ill. 2008). If venue is improper, the court "shall dismiss [the case], or if it be in the

interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

### 2. The Propriety of Venue in the Northern District of Illinois

Dr. Sarma and Creighton University argue that Johnson's allegations fail to show that an allegedly tortious act or omission occurred in Illinois and that Dr. Sarma's diagnosis could not have harmed Johnson because Dr. Santos was the physician who decided that no melanoma existed and that no treatment was necessary. In contrast, Johnson contends that a substantial part of the events or omissions giving rise to her claim occurred in this district: it is the location where (1) she sought out medical care for the mole on her leg and the mole was biopsied, (2) Dr. Santos sent the biopsy to Dr. Sarma and then received Dr. Sarma's report and discussed it with Dr. Sarma, and (3) she received extensive treatment following her diagnosis. In addition, a pathologist at Loyola University Medical Center in Chicago re-reviewed the slides that Dr. Sarma had examined when he opined that she did not have melanoma.

The critical events underlying Johnson's claim are Dr. Sarma's act of sending a report about an Illinois patient that was requested by an Illinois doctor to Illinois and his discussion of that report with Dr. Santos. These events form the essential "historical predicate" for Johnson's negligence claims against Dr. Sarma and his employer, Creighton University. *See Jackson*, 2014 WL 4269448, at \*6. Johnson unquestionably felt the effects of the defendants' allegedly tortious conduct in Illinois, as following Dr. Sarma's report, she sought further treatment for melanoma in Illinois and ultimately was diagnosed with malignant melanoma that had metastasized. The parties disagree about whether Dr. Santos' reliance in Illinois on Dr. Sarma's report was reasonable and the role that the report played in Dr. Santos' decision about what treatment to

-13-

recommend; Dr. Sarma attempts to distance himself from the report, while Dr. Santos testified at his deposition about his rationale for relying on it. But the court cannot decide this issue at this stage of proceedings. Instead, for the purposes of deciding if venue is proper, it must resolve this issue in Johnson's favor. *See Hanyuan*, 553 F. Supp. 2d at 964.

In sum, § 1391(b)(2) requires that a substantial part – not the majority – of the events giving rise to the claim must occur in the district at issue. *See Caldera Pharm., Inc. v. Los Alamos Nat'l. Sec., LLC*, No. 10 C 6347, 2012 WL245115, at *1 (N.D. Ill. Jan. 26, 2012). The facts before the court easily satisfy this standard. This is especially true because this is a tort case, where "courts tend to focus on where the allegedly tortious actions took place and where the harms were felt." 14D Charles A. Wright, *et al.*, Federal Practice and Procedure: Jurisdiction 3d § 3806 (2007). The defendants' motion to dismiss based on allegedly improper venue is denied.

### III. CONCLUSION

The motions to dismiss based on an alleged lack of personal jurisdiction and improper venue filed by Dr. Sarma [25] and Creighton University [41] are denied. The defendants shall answer by August 5, 2015. This case is set for status on August 14, 2015 at 9:30 a.m.

Date: July 14, 2015           /s/
                              Joan B. Gottschall
                              United States District Judge